UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARY MILLION on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOSPITAL SISTERS HEALTH SYSTEM and ST. FRANCIS HOSPITAL, OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS,<br><br>Defendants. | Case No. _____<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Mary Million, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Hospital Sisters Health System and St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis for their violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA").

## INTRODUCTION

1.  Hospital Sisters Health System is a healthcare system that operates a network of fifteen hospitals and other healthcare facilities throughout the Midwest, including in Illinois. St. Francis Hospital, located in Litchfield, Illinois, is one of the hospitals in the healthcare system.

2.  As part of its hiring process, Hospital Sisters Health System requires potential employees to submit to a preemployment medical examination during which the potential employees must disclose their family medical history. This practice violates GIPA. St. Francis Hospital does the same, also violating GIPA.

3.       The Illinois General Assembly recognized a strong right to privacy when it enacted GIPA. It specifically recognized how important this right was for genetic information, including familial health history, given how sensitive that information is for individuals.

4.       GIPA, among other things, regulates employers' use of genetic information. It specifically notes that an employer or employment agency shall not "solicit, request, require, or purchase genetic testing or genetic information of a person or a family member of the person."

5.       GIPA defines "genetic information" as information pertaining to, among other things "the manifestation of a disease or disorder in family members of such individual." 410 ILCS 513/10; 45 C.F.R. § 160.103.

6.       Defendants violated GIPA when they required potential employees, like Plaintiff, to disclose their family medical histories during the preemployment application process

7.       Plaintiff, on behalf of herself and all others similarly situated, bring this action seeking damages, injunctive relief, attorneys' fees, and costs.

## PARTIES

8.       At all times relevant to this action, Plaintiff Mary Million ("Plaintiff" or "Million") was domiciled in and was a resident of Hillsboro, Illinois.

9.       Defendant Hospital Sisters Health System ("HSHS") is an Illinois not-for-profit corporation with its registered address at 4936 Laverna Road, Springfield, Illinois.

10.      Defendant St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis ("St. Francis") is an Illinois not-for-profit corporation with its registered address at 4936 Laverna Road, Springfield, Illinois.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from Defendants' citizenship; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because Defendants operate, conduct, and engage in substantial business in Illinois, and Plaintiff's claim arises out of actions that occurred in Illinois.

13.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

**FACTUAL ALLEGATIONS**

**The Illinois General Assembly enacted GIPA to enshrine
a right to privacy for its citizens' genetic information**

14.     Advances in mapping the human genome have opened up a world of possibilities for using genetic information to learn about one's family tree, glean insights as to how our genetic code affects our health and behavior, and to prevent and treat diseases.

15.     But these advances have also come with risks—genetic information is extremely private, very sensitive, and could be used by outside parties for discriminatory or other improper purposes.

16.     The Illinois General Assembly recognized this risk and passed GIPA in 1998. In doing so, it sought to enshrine a right to privacy for its citizens and to protect their genetic information.

17.     Specifically, it found that "[l]imiting the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish an intended purpose, when

being transmitted by or on behalf of a covered entity under HIPAA, is a key component of health information privacy." 410 ILCS 513/5.

18. GIPA defines genetic information identically to the federal Health Insurance Portability and Accountability Act:

> "Genetic information means:
>
> ***
>
> (i) The individual's genetic tests;
> (ii) The genetic tests of family members of the individual;
> (iii) The manifestation of a disease or disorder in family members of such individual; or
> (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual."

410 ILCS 513/10; 45 C.F.R. § 160.103.

19. Recognizing that employers or employment agencies may be especially prone to use genetic information in a discriminatory manner, GIPA specifically provides that:

> An employer, employment agency, labor organization, or licensing agency shall not directly or indirectly do any of the following:
>
> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure;
>
> (2) affect the terms, conditions, or privileges of employment, preemployment application, labor organization membership, or licensure, or terminate the employment, labor organization membership, or licensure of any person because of genetic testing or genetic information with respect to the employee or family member, or information about a request for or the receipt of genetic testing by such employee or family member of such employee;

4

> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, or information about a request for or the receipt of genetic testing or genetic information by such employee or family member of such employee; and
>
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 ILCS 513/25(c) (emphasis added).

20. Similarly, even if an employer or employment agency lawfully obtains genetic information under GIPA, it "still may not use or disclose the genetic tests or genetic information in violation of this Act." 410 ILCS 513/25(j).

21. The invasion of this "legally protected privacy right…is personal and real, not general and abstract." *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020).

22. The Illinois General Assembly gave the law teeth to ensure compliance. GIPA allows for a private right of action and provides statutory damages of $2,500 per violation, or actual damages for parties who negligently violate the statute, and $15,000 per violation for those that intentionally or recklessly violate the statute. 410 ILCS 513/40(a). GIPA further provides for the recovery of attorneys' fees, costs, and other litigation expenses. *Id*.

**Defendants require Employees to submit to preemployment medical examinations that involve questions about their family medical histories.**

23. Defendants are employers under GIPA because they are not-for-profit corporations that employ individuals within the state of Illinois.

24. HSHS is a healthcare system that provides medical care to individuals throughout Illinois and other states.

25. St. Francis is a hospital within the HSHS healthcare system and provides medical care to individuals in or around Montgomery and Macoupin Counties in Illinois.

26. As part of their preemployment application process, Defendants require potential employees to submit to a medical examination that is conducted by an HSHS employee.

27. Completing the preemployment medical examination is a precondition for employment for prospective employees seeking positions with Defendants.

28. During their preemployment medical examinations, Defendants ask questions about and requires prospective employees to disclose information concerning their family medical histories, including family history of heart disease, asthma, psychological issues and/or mental health.

29. Defendants' preemployment application process violates GIPA. An individual's family medical history constitutes "genetic information" under GIPA, and Defendants directly and/or indirectly solicits such information as a precondition of employment.

30. Upon information and belief, all Illinois Employees who wish to work for Defendants are required to submit to a preemployment medical examination.

31. This invasion of a legally protected privacy right is personal and real, and each GIPA violation by Defendants "is sufficient in and of itself to render an individual an aggrieved person entitled to pursue relief." *Citizens Insurance Co. of America v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 991 (7th Cir. 2023).

**Defendants required Plaintiff to disclose her genetic
information as part of their preemployment application process.**

32. Million applied for a job with Defendants in or around June of 2022 for employment at St. Francis in Litchfield, Illinois.

33. As part of the application process, and as a precondition for employment with Defendants, Million was required to submit to an in-person medical examination at Priority Care South MacArthur, 1836 S. MacArthur Blvd., Springfield, Illinois, which upon information and belief is owned and operated by HSHS. The examination was conducted by an HSHS employee.

34. During the medical examination, Million was asked questions about her family's medical history. Specifically, Defendants inquired whether there was a history of heart disease, asthma, or psychological conditions in her family.

35. Million answered the questions about her family medical history during the required medical examination.

36. Million was subsequently hired by HSHS and/or St. Francis and worked at St. Francis.

## CLASS ALLEGATIONS

37. Plaintiff realleges the allegations in paragraphs 1-36, above, as if fully set forth in this paragraph.

38. Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action individually and on behalf of the following Class:

> All individuals in Illinois who, within the applicable limitations period:
>
> (i) applied for employment with Hospital Sisters Health System or St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis, or were employed by them; and

  (ii) from whom Hospital Sisters Health System and St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis, or its employees, agents, assigns, contractors, or other third parties acting on their behalf, requested, solicited, required, and/or obtained genetic information, including family medical history.

39. Plaintiff represents, and is a member of, the Class.

40. Excluded from the Class are any officer or director of Defendants, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

41. Plaintiff reserves the right to amend or modify the Class definition after having an opportunity to conduct discovery.

42. The Class meets all the criteria for certification under 735 ILCS 5/2-801. Plaintiff and all members of the Class have been harmed by the acts of Defendants, specifically suffering injury to their "legally protected privacy right [which] is personal and real, not general and abstract." *Fox*, 980 F.3d at 1149.

43. Class-wide adjudication of Plaintiff's claim is appropriate because Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims

44. ***Numerosity***. The members of the Class are so numerous that individual joinder of all Class members is impracticable. Although the exact number of members is unknown at this time, it can readily be determined from the internal business records of Defendants. Plaintiff reasonably estimates that there are hundreds of members in the Class.

45. ***Commonality and Predominance***. Common questions of law and fact exist as to all members of the putative class that will drive the litigation and predominate over any questions affecting only individual class members. Common questions include, but are not limited to:

  a. Whether Defendants' conduct is subject to GIPA;

b. Whether Defendants solicited, requested, or required the disclosure of Plaintiff's and other Class members' genetic information as a precondition of employment and/or as part of the preemployment application process;

c. Whether Defendants' violations of GIPA were negligent;

d. Whether Defendants' violations of GIPA were intentional or reckless;

e. Whether Defendants should be enjoined from soliciting, requesting, or requiring the disclosure of information about potential employees' family medical histories as a precondition of employment or as part of their preemployment application process; and

f. Whether Plaintiff and Class members are entitled to damages, attorneys' fees and costs, and other litigation expenses under GIPA.

46. ***Typicality.*** Plaintiff's claims are typical of the claims of each member of the Class and are based on the same facts and legal theories as each of the members. Plaintiff, like all members of the Class, was asked to provide information about her family medical history by Defendants during a medical examination mandated by their preemployment application process, and as a precondition for employment. Plaintiff, like all Class members, was thus subject to Defendants' common practices that violated GIPA. Plaintiff is entitled to relief under the same cause of action as the other members of the Class.

47. ***Adequacy of Representation.*** Plaintiff is an adequate representative of the putative Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex class action litigation, who intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

48. ***Superiority.*** Questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to

other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs. Plaintiff is not aware of any other current pending litigation against Defendants to which any Class member is a party involving the subject matter of this suit, and the Action presents no difficulties that will impede its management by the Court as a class action.

49.     ***Injunctive Relief Appropriate for the Class.***   Class certification is appropriate because Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to Plaintiff and putative Class members. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that could establish incompatible standards of conduct for Defendants. Injunctive relief is necessary to prevent further GIPA violations from Defendants.

## **CLAIM FOR RELIEF**

### COUNT I
**Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.***

50.     Plaintiff realleges the allegations in paragraphs 1-36, above, as if fully set forth in this paragraph.

51. Defendants are considered employers under GIPA, 410 ILCS 513/10, because they employ individuals within the state of Illinois.

52. GIPA defines "genetic information" to include the manifestation of a disease or disorder in family members of an individual. 410 ILCS 413/10; 45 C.F.R. § 160.103.

53. Under GIPA, employers are prohibited from directly or indirectly soliciting, requesting, requiring, or purchasing genetic information of a person or a family member of the person as a precondition for employment or as part of any preemployment application process. 410 ILCS 513/25(c)(1).

54. As a precondition of their employment with Defendants, and as part of the Defendants' employment application process, Plaintiff and the members of the Class were required to answer questions regarding their family medical histories, which includes the manifestation of a disease or disorder in family members.

55. Defendants thus directly or indirectly solicited, requested, and required Plaintiff and the members of the Class to disclose their genetic information.

56. Defendants acted intentionally in violating GIPA by forcing Plaintiff and other members of the Class to undergo medical examinations that included questions about their family medical histories.

57. Defendants are sophisticated corporate entities that have operated in Illinois for years. Their conduct was reckless because they knew or should have known about GIPA and their obligations under state law. This is particularly true given that Defendants operate health care sites and employ thousands of individuals in Illinois.

58. Defendants acted negligently in violating GIPA when they, among other things:

   a. Failed to inform potential employees and employees of their rights under GIPA; and

11

  b. Failed to train its employees, agents, assigns, contractors and other third-parties acting on their behalf on GIPA compliance.

59. Plaintiff and other members of the Class have been aggrieved by Defendants' violations of their rights under GIPA.

## DEMAND FOR JURY TRIAL

60. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on behalf of herself and the Class she seeks to represent against Defendants for:

  a. An order certifying the asserted claim, or issues raised, as a class action;

  b. An order appointing Plaintiff as a representative for the Class and appointing her counsel as lead counsel for the classes;

  c. A judicial declaration that Defendants' practices violate GIPA;

  d. An order enjoining Defendants from continuing their practices of soliciting information about potential employees' family medical history as part of their pre-employment application process or as a condition of employment;

  e. Statutory damages of $15,000 for each reckless or intentional violation of GIPA pursuant to 410 ILCS 513/40(a)(2);

  f. Statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(1);

  g. Pre-judgment and post-judgment interest;

  h. Reasonable attorneys' fees and costs, and other litigation expenses; and

  i. Any other and further relief that the Court deems just and proper.

Dated: December 19, 2024

Respectfully submitted,

/s/ S. Jarret Raab
Gary M. Klinger (ARDC No. 6303726)
S. Jarret Raab (ARDC 6294632)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel. 866.525.0878
gklinger@milberg.com
jraab@milberg.com

Zachary Arbitman*
George Donnelly*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, Pennsylvania 19103
Tel: 215.567.8300
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

* *Pro ac Vice* applications pending

*Counsel for Plaintiff and Proposed Class*

13