## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **MARY MILLION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-3357** |
| | ) | |
| **HOSPITAL SISTERS HEALTH** | ) | |
| **SYSTEM,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Plaintiff's Motions to Compel Discovery (d/e 29, 43), Defendants' Motion to Stay Discovery (d/e 37) and Motion to Dismiss (d/e 49), and the respective responses and replies thereto. For the following reasons, Plaintiff's Motions to Compel are GRANTED, Defendants' Motion to Dismiss is DENIED, and Defendants' Motion to Stay is MOOT.

### BACKGROUND

On December 19, 2024, Plaintiff Mary Million, individually and on behalf of those similarly situated, filed a one-count Class Action Complaint in this Court, asserting that she was required to undergo

a preemployment medical screening and answer questions regarding family history of illnesses, in a manner that violated the Illinois Genetic Information Privacy Act (GIPA), 410 Ill. Comp. Stat. 513/1, *et seq.  See* d/e 1, ¶¶ 28-35.

GIPA does not allow an employer, directly or indirectly, to "solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure[.]"  410 Ill. Comp. Stat. 513/25(c)(1).

On February 28, 2025, Defendants Hospital Sisters Health System ("HSHS") and St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis ("St. Francis Hospital"), moved to dismiss the sole count of Plaintiff's Complaint for failure to plausibly state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* d/e 14, 15.

On May 15, 2025, this Court entered an Opinion and Order denying that motion to dismiss.  *See* d/e 27.  Specifically, the Court held that the Complaint sufficiently alleged that Defendants'

questions as to Plaintiff's family medical history during a preemployment medical screening constituted the soliciting of genetic information as a condition of employment and that Plaintiff had sufficiently alleged that Defendants' conduct was intentional or reckless.  In that same Order, this Court also held that it has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than the Defendants.

Meanwhile, on March 7, 2025, Magistrate Judge Eric I. Long adopted the deadlines agreed upon in the Parties' Joint Proposed Discovery Schedule.  *See* d/e 15, 17.  Pursuant to the parties' proposal, all fact discovery was to be completed by November 30, 2025; expert disclosures, reports, and depositions were due during January through March 2026; and the deadline to file a motion for class certification and any dispositive motions was May 15, 2026.

Further, by agreement of the parties, on April 30, 2025, Magistrate Judge Long entered an Agreed Confidentiality Order, Qualified Protective Order, and Electronically Stored Information and Hard Copy Records Order (d/e 26).

On August 6-7, 2025, new counsel entered appearances on Defendants' behalf and prior counsel withdrew.  *See* d/e 34, 35, 39.

## MOTION TO DISMISS

The Court first considers the Motion to Dismiss for Lack of Subject Matter Jurisdiction and Rule 11 Sanctions (d/e 49) and accompanying Memorandum of Law (d/e 50) filed by Defendants on August 28, 2025 because, if granted, the earlier-filed discovery motions would become moot.  Plaintiff filed her Response (d/e 53) on September 11, 2025, to which Defendants filed a Reply (d/e 54) on September 18, 2025.

## I.    Defendants' Motion to Dismiss for Lack of Subject Jurisdiction is Denied.

### A.    Rule 12(b)(1) Standard

The standard that the Court applies to a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction depends on the purpose of the motion.  *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).  If a defendant challenges the sufficiency

of the allegations regarding subject-matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and will draw all reasonable inferences in favor of the plaintiff.  *See Apex Digital*, 572 F.3d at 443–44; *United Phosphorus*, 322 F.3d at 946.  If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may look beyond the pleadings and view any evidence submitted to determine if subject-matter jurisdiction exists.  *See Apex Digital,* 572 F.3d at 443–44; *United Phosphorus,* 322 F.3d at 946.

When jurisdiction is in question, "the proponent of jurisdiction has the burden of proof, but the burden applies only to contested jurisdictional facts, which must be proven by a preponderance of the evidence." *Irish v. BNSF Ry. Co.*, 2009 WL 276519, at *2 (W.D. Wis. Feb. 4, 2009), *citing Meridian v. Sadowski,* 441 F.3d 536, 542 (7th Cir. 2006); *see also Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).  "[O]nce the proponent of jurisdiction has made a good faith claim…, supported by uncontested factual allegations or contested factual allegations that have been established in an evidentiary hearing by admissible evidence, federal jurisdiction follows unless the judge concludes that it is legally impossible for

Page **5** of **28**

the recovery to exceed the jurisdictional minimum." *Irish*, 2009 WL 276519, at \*2 ("*Meridian Security Ins.* concerned the amount in dispute, but the holding of the case applies equally to the prediction of class size, an element not present in the mine run diversity case but critical to [jurisdiction] under the Class Action Fairness Act.").

### B.    Defendants' Arguments

Defendants have raised the second type of jurisdictional challenge.  That is, Defendants ask that the Court not accept the jurisdictional factual allegations in the Complaint as true and instead require Plaintiff to present "summary judgment type evidence" to support her allegation that jurisdiction exists under the Class Action Fairness Act (CAFA).  *Licea v. Kontoor Brands, Inc.*, 2023 WL 6162683, at \*1 (C.D. Cal. Sept. 18, 2023) ("Plaintiff must submit evidence—i.e., declarations, affidavits, or other summary-judgment type evidence" to show that CAFA's jurisdictional threshold has been met).

CAFA "creat[es] federal subject matter jurisdiction if (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ('minimal diversity'); and (3) there is more than $5 million, exclusive of interest and costs, in

controversy in the aggregate." *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (emphasis removed), *citing* 28 U.S.C. § 1332(d).

Defendants argue that Plaintiff cannot meet her burden of showing, by a preponderance of the evidence, that jurisdiction exists under CAFA. Instead, Defendants argue that Plaintiff's assertion as to the number of class members and the existence of diversity is based only a speculative belief. *See Halim v. Charlotte Tilbury Beauty Inc.*, 2023 WL 3388898, at *4 (N.D. Ill. May 11, 2023) (holding that "speculation is not enough" to satisfy the existence of subject-matter jurisdiction).

First, Defendants argue that Plaintiff's assertion that at least 100 class members exist is not actually supported by any document(s) demonstrating that anyone other than Plaintiff was subject to inquiry about their family members' genetic information when they applied for employment with Defendants.

Second, Defendants argue that Plaintiff does not have any evidence to identify that at least one class member is a citizen of a state that is diverse from Defendants' citizenship. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019).

**C.    Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction is Denied because Plaintiff has Presented Sufficient Evidence at this Stage that there are 100 or More Class Members and that at Least One Class Member is a Citizen of a State that is Diverse from Defendants' Citizenship.**

In response to Defendants' Motion, Plaintiff has met her burden of producing evidence that 100 or more class members exist.

Pursuant to the Complaint, the proposed class is defined as:

All individuals in Illinois who, within the applicable limitations period [5 years]:

(i)    applied for employment with Hospital Sisters Health System or St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis, or were employed by them; and

(ii)   from whom Hospital Sisters Health System and St. Francis Hospital, of the Hospital Sisters of the Third Order of St. Francis, or its employees, agents, assigns, contractors, or other third parties acting on their behalf, requested, solicited, required, and/or obtained genetic information, including family medical history.

(d/e 1, ¶ 38).

Again, Defendants maintain that there are no documents or other "summary judgment type evidence" that would support Plaintiff's allegation that *any* other individuals—much less at least 100 others—were asked about their genetic information, including

family medical history, when applying for employment with
Defendants.

Defendants are wrong. At this stage, prior to the close of
discovery, the following evidence supports Plaintiff's allegations that
100 or more other employees or applicants for employment were
asked about their family medical history by Defendants:

- Defendant HSHS's website clearly specifies they employ "more
  than 11,000 colleagues" at their health centers and clinics;

- According to published industry research, hospital employee
  turnover rates during the relevant time period ranged from 18
  to 26 percent nationwide;

- A YouTube video from HSHS Medical Group[1] included the
  statement that "probably one of the first things we ask when a
  patient comes to see us is there a family history of any of these
  things...";

- Discovery produced by Defendants to date included a policy
  indicating that all candidates for employment with Defendant

---

[1] In response to written discovery, Defendants identified HSHS
Medical Group as an entity to whom HSHS referred employees or
applicants for employment in Illinois for medical examinations.
(d/e 43-2, ¶¶ 3-4).

HSHS were required to be cleared with a pre-employment
health assessment including a pre-employment physical;

- Defendant HSHS's website included a Code of Conduct
indicating that they collect information about family history,
as well as a commonly-used "Adult History & Physical
Examination Form" that included a section on family history;

- Defendants filed as an exhibit (d/e 36-3, p. 20) a document
not yet produced in discovery entitled "Screening Checklist for
Contraindications to Vaccines for Adults" and described by
Defendants as "the form sent to HSHS on each exam" of an
applicant for employment, which includes the following
question: "Do you have a parent, brother, or sister with an
immune system problem?"

In short, and contrary to Defendants' arguments, Plaintiff is
not relying on mere speculation. Based upon the foregoing
documentary evidence filed by Plaintiff in response to Defendants'
Motion to Dismiss, Plaintiff has established by a preponderance of
the evidence the following facts: Defendants employ over 11,000
employees, all candidates for employment have been required to
receive a pre-employment physical, Defendants referred employees

and applicants for employment in Illinois to HSHS Medical Group for medical exams, HSHS Medical Group routinely asks patients about family history, and at least one form sent to Defendant HSHS on completion of an applicant's exam includes a question regarding whether the applicant's immediate family members suffer from a specific medical condition (an immune system problem).

These facts are sufficient, at this stage, to rebut Defendants' arguments that Plaintiff has no evidence that 100 or more other employees or applicants were asked for family medical history. *See Irish*, 2009 WL 276519, at *4 ("At this point, the only question is whether plaintiffs have shown that it is a legal certainty that this jurisdictional requisite will not be met."), *citing Meridian Security Ins.,* 441 F.3d at 541.

Likewise, at this stage Plaintiff has met her burden of proving it is more likely true than not that at least one class member is diverse from at least one defendant. Defendants are Illinois not-for-profit corporations with the same registered address in Springfield, Illinois.

Defendants point to Plaintiff's written discovery response indicating that she has not personally spoken to any person who is

a member of the proposed class.  It follows, therefore, that Plaintiff cannot at this stage identify a specific class member by name who is a citizen of a state other than Illinois.

In response, Plaintiff maintains that Defendants are fully aware that they employ Missouri citizens.  In support thereof, Plaintiff points to the following publicly-available evidence:

- LinkedIn pages for specific, named individuals who list their home city as St. Louis, Missouri, and their employer as either HSHS or St. Francis Hospital;

- A document from HSHS human resources indicating that Defendants' employees are within the "HSHS Select" health plan network service area if their primary residence is within one of 31 listed counties in Illinois or *5 counties in Missouri*; and

- An indeed.com search for jobs with "hshs" in St. Louis, MO, returns multiple hospitals within commuting distance from Missouri, including Defendant St. Francis Hospital and HSHS's St. Elizabeth Hospital.

Based on the foregoing evidence, the Court finds that Plaintiff has shown that it is more likely true than not that at least one

member of the proposed class is a Missouri citizen and therefore diverse from Defendants.  Plaintiff need not prove more at this stage, prior to class certification or dispositive motions.  That is, Plaintiff need not establish that there is a specific Missouri (or other diverse) citizen whose rights under GIPA were violated by Defendants.  *See Boim v. American Muslims for Palestine*, 9 F.4th 545, 557 (7th Cir. 2021) ("The Supreme Court has cautioned against deciding merits questions when evaluating challenges to jurisdiction."), *citing Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); *see also Bell v. Hood*, 327 U.S. 678, 682 (holding that jurisdiction is not defeated by the possibility that the Plaintiff may not actually recover on the cause of action alleged in the complaint).

For the foregoing reasons, Defendants' Motion to Dismiss for lack of subject-matter jurisdiction is DENIED.

## II. Defendants' Motion for Sanctions is Denied because Plaintiff did not Violate Rule 11.

Federal Rule of Civil Procedure Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and

belief, formed after an inquiry reasonable under the
circumstances:

… (3) the factual contentions have evidentiary support or, if
specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or
discovery[.]

Fed. R. Civ. P. 11(b)(3).

Defendants allege that Plaintiff, through Plaintiff's counsel,

violated Rule 11(b)(3) because the factual allegations regarding

CAFA jurisdiction in Plaintiff's Complaint do not have evidentiary

support and because Plaintiff's counsel did not actually conduct a

reasonable inquiry prior to filing the Complaint.  Defendants

therefore move for sanctions as provided under Rule 11(c).

Defendants' Motion must be denied for two reasons.  First, the

Motion does not comply with Rule 11(c)(2)'s requirement that "[a]

motion for sanctions must be made separately from any other

motion" because Defendants filed the request for Rule 11 sanctions

in the same filing as its Motion to Dismiss pursuant to Rule

12(b)(1).

Second, Plaintiff's Complaint did not violate Rule 11(b)(3).  As

with the request to dismiss for lack of subject-matter jurisdiction,

Defendants argue that Plaintiff's belief that subject-matter exists

under CAFA is based upon mere speculation and is not based upon facts supported by reasonable inquiry.

The Court has now rejected this argument when denying Defendants' motion to dismiss for lack of subject-matter jurisdiction. As discussed above, Plaintiff has demonstrated that her factual contentions regarding CAFA subject-matter jurisdiction have evidentiary support. Moreover, much of the information that Plaintiff has presented in support of jurisdiction was available upon inquiry by her counsel prior to filing the Complaint via publicly-available information on the internet and was not merely uncovered during discovery in this case. *Cf. Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1014 (7th Cir. 2004) ("The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery.").

For these reasons, Defendants' request for Rule 11 sanctions must be DENIED.

### DISCOVERY MOTIONS

## I.    Defendants' Motion to Stay Discovery is Denied because this Court has Subject-Matter Jurisdiction.

The Court first considers the Motion to Stay (d/e 37), in which Defendants requested a stay of discovery pending the resolution of the foregoing Motion to Dismiss and accompanying request for Rule 11 sanctions filed by Defendants. The Court has now denied both Defendants' Motion to Dismiss and their request for Rule 11 sanctions. Therefore, the case will proceed with discovery, and the Motion to Stay is MOOT.

## II.  Plaintiff's Motions to Compel are Granted because Plaintiff's Discovery Requests are Proper Under the Parties' Joint Discovery Schedule and the Electronically Stored Information and Hard Copy Records Order.

### A.    Plaintiff's Motion to Compel Defendants to Participate in Class Discovery is Granted.

In Plaintiff's Motion to Compel Defendants to Participate in Class Discovery (d/e 29), Plaintiff asks that the Court compel Defendants' response to interrogatories number 10 and 11, request for production 20, and other requests related to class certification.

Interrogatory 10 requests that Defendant HSHS "[i]dentify the number of HSHS employees and applicants for employment with HSHS in Illinois that submitted to a Medical Examination during the Relevant period." (d/e 29-1, p. 7 ¶ 10). Interrogatory 11 requests that Defendant HSHS "[i]dentify all individuals, including

HSHS employees and applicants for employment with HSHS, that submitted to a Medical Examination in Illinois during Relevant Period" and include each individual's name, date of application and/or employment, position held with HSHS, examining medical provider, date of exam, reason for exam, and the specific health, medical, or other genetic information requested.  (d/e 29-1, p. 7-8 ¶ 11).

Request for production 20 seeks "[a]ll documents and communications relating to requests for health and/or medical information (including family medical history) made to those individuals other than Million identified in Interrogatory 10, above, by any medical professional to whom such individual was referred to by HSHS."  (d/e 29-1, p. 12 ¶ 20).

Defendants responded to Plaintiff's interrogatories 10 and 11 and request for production 20 with the following identical objection: "Defendants object to [Interrogatory/Request] as overbroad, and not proportional to the needs of the case as the class has not been certified."  (d/e 29-2, p. 9 ¶¶ 10-11, p. 15-16 ¶ 20).

Defendants' objection—which is based upon the fact that the class has not yet been certified—is not well-taken.

As indicated in the Background section, above, Magistrate Judge Long entered an Order on March 7, 2025, adopting the parties' joint proposed deadlines. Those deadlines included one fact discovery deadline on November 30, 2025, followed by expert discovery deadlines throughout January, February, and March 2026, and a deadline to file a motion for class certification by May 15, 2026. That is, the parties agreed to one fact discovery deadline, necessarily encompassing both merits-based and class-based discovery. *See, e.g., Hossfeld v. Allstate Co.*, 2021 WL 4819498, at *3 (N.D. Ill. Oct. 15, 2021) ("As an initial matter, [Defendant's] argument that [Plaintiff] should not be permitted to obtain information relevant to his class claims at this time is without merit. Merit and class fact discovery are not bifurcated in this case and thus, there is only one fact stage of discovery....Given that the Court has not bifurcated merits and class discovery, the fact that the [document requested] is relevant to the class certification inquiry or even to a later standing determination of which class members have suffered a redressable injury does not make it disproportional to the needs of the case or otherwise improper at

this time."); *See also Whiteamire Clinic, P.A. Inc. v. Quill Corp.*, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 25, 2013).

Prior to class certification, "the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification" under Rule 23: numerosity, common questions of law or fact, typicality, and adequacy of representation. *Gebka v. Allstate Corp.*, 2021 WL 825612, at *7 (N.D. Ill. Mar. 4, 2021) (collecting cases); Fed. R. Civ. P. 23(a); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n.20 (1978) ("We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23"—such as numerosity, common questions, and adequacy of representation—"or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.").

Therefore, Plaintiff is entitled to responses by Defendants to interrogatories number 10 and 11 and request for production 20 at this stage of discovery, prior to class certification.

Further, to the extent that Defendants now object, in response to Plaintiff's Motion to Compel, that the requested discovery "tramples on third-party privacy rights" (d/e 36, p. 2), those issues were already addressed with entry of agreed-upon confidentiality and qualified protective orders (d/e 26). If Defendants believe those agreed orders entered by the Magistrate Judge are now insufficient, Defendants may formally raise this issue with the Magistrate after conferring with Plaintiff's counsel in an attempt to agree upon a proposed revised order.

For these reasons, Plaintiff's Motion to Compel Defendants to Participate in Class Discovery is GRANTED.

**B.    Plaintiff's Motion to Compel Defendants to Produce ESI Information is Granted.**

Finally, in Plaintiff's Motion to Compel Defendants to Produce ESI Information (d/e 43), Plaintiff asks that this Court order Defendants to:

> 1. Provide Defendants' proposed search terms and search term hit reports;
>
> 2. Disclose the ESI Sources it has searched to date, including Custodial and Non-Custodial Data Sources as those terms are defined in the ESI Protocol (ECF No. 26);
>
> 3. Provide the date range of the search;

4. Provide any other method of limitation being used by Defendants to cull responsive data;

5. Meet and confer with counsel for Plaintiff regarding this information; and

6. Pay Plaintiff's reasonable expenses and attorney fees incurred in bringing this Motion.

(d/e 43-6, p. 1-2; *see also* d/e 43, p. 6-7).

As already summarized, the Magistrate Judge entered an Electronically Stored Information and Hard Copy Records Order on April 30, 2025, pursuant to the parties' joint agreements regarding discovery of electronically stored information ("ESI"). (d/e 26, p. 30-50). That Order governs the production of documents by the parties during discovery in this matter and provides, in relevant part:

> To achieve proportional and cost-effective discovery, the Parties agree that limitations on the scope of the search (e.g., time frames, Document types, keywords, etc.) may be employed by the Parties to reasonably cull out non-responsive information. If Search Terms are used, the Producing Party will disclose those Search Terms to the Requesting Party. If the Requesting Party in good faith believes additional Search Terms are likely to yield additional unique, relevant information, the Requesting Party may propose additional Search Terms. In that event, the Parties agree to meet and confer about the anticipated benefits and burdens of those additional proposed Search Terms. If disputed terms still exist at the end of the meet and confer process, the Parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or

burden associated with those Search Terms. If some other method of limitation is used to cull responsive data, the Producing Party will disclose the method to the Requesting Party.

(d/e 26, p. 46 § 5 ¶ 1).

According to the Motion to Compel filed by Plaintiff, Plaintiff received Defendants' responses to Plaintiff's requests for production of documents on May 9, 2025.  Plaintiff sent Defendants a letter on June 9, 2025, indicating that Defendants' produced documents had included no emails or other internal or external electronic communications.  On its face, it appeared implausible to Plaintiff that no responsive emails or other ESI could exist.  Plaintiff then proposed:

> Regarding the [requested] Class Discovery and ESI Production, we are willing to work with you to create a set of initial search terms, list of custodians, and list of databases to search in relation to our Requests for Production. This will allow us to start the iterative process necessary to ensure proportional discovery in this case. *See Rayome v. ABT Elecs. Inc.*, 2024 WL 4296755, at *1 (N.D. Ill. Sept. 24, 2024) ("The quality control measures that Parties may consider to address these limitations include, among other things, sampling and testing the search terms to determine whether they are actually returning relevant documents….These iterative measures, together with the sharing of responsive metrics corresponding to the sampled and reviewed documents, can help Parties identify responsive ESI in a more proportional manner."). This process follows what we agreed to in the ESI Protocol entered in this litigation. *See* ECF #26. Specifically, Section V of the

ESI Protocol governs the custodians and search methodology for ESI.

(d/e 43-3, p. 3).

On June 26, 2025, the parties engaged in a meet-and-confer about discovery, including the lack of ESI in Defendants' initial production and discussed Defendants' ongoing efforts to search emails and texts, as well as other databases, using relevant search terms.  Defendants agreed to identify search terms and ESI sources used in producing additional responsive documents.  On July 25, 2025, the parties again met and conferred and Defendants agreed to make their best effort to disclose search term reports and ESI sources before the next scheduled meet-and-confer on August 1, 2025 (which was later moved to August 5, 2025, at Defendants' request).

On August 5, 2025, Plaintiff was notified that Defendants' counsel would be withdrawing and that Plaintiff's counsel should meet and confer with new counsel regarding the foregoing discovery issues.  However, prior to any opportunity for further meet-and-confer, Defendants filed a Motion to Stay Discovery the following day.

Defendants do not dispute the foregoing chronology in their response to Plaintiff's Motion.  Instead, Defendants: (1) repeat their argument that Plaintiff's case should be dismissed for lack of subject-matter jurisdiction; (2) argue that Plaintiff failed to properly meet and confer before filing her Motion to Compel; and (3) assert that the information that Plaintiff is requesting is not contemplated by the ESI Order.

Defendants' first two arguments are baseless.  The Court has already rejected Defendants' argument as to subject-matter jurisdiction.  Further, the undisputed chronology indicates that Plaintiff did comply with the required meet and confer obligations before filing the instant Motion to Compel.  The Court cannot reasonably require Plaintiff to have attempted further meetings when Defendants did not participate in the scheduled August 5, 2025, conference and instead filed a Motion to Stay Discovery altogether.

Turning to Defendants' final argument regarding the scope of the ESI Order, Defendants argue that they were required to disclose only: "(1) search terms *if* search terms were used; and (2) any limited method used to cull responsive data *if* such a method was

used." (d/e 51, p. 2 (emphasis added by Defendants)). As such, Defendants assert that they were not required to conduct a search for responsive documents in any particular manner, nor were they required to disclose "information related to search term hit reports, databases, custodians, or date ranges." *Id.*

Defendants' interpretation of the ESI Order is not a reasonable understanding of the requirements under that Order.

With respect to Defendants' argument that the ESI Order did not require the search of ESI to be conducted in any particular manner and only required Defendants to disclose search terms if any were actually used, the ESI Order plainly directed that the parties meet and confer if the party requesting production has a "good faith belie[f] [that] additional Search Terms are likely to yield additional unique, relevant information[.]" (d/e 26, p. 46). Defendants may not simply assert that they did not use any search terms[2] when identifying and producing responsive documents and

---

[2] Further, Defendants have already admitted that while their "search for responsive documents…has been largely manual[,]" "search terms [have] be[en] used in a limited fashion." (d/e 51-6, p. 1). Therefore, search terms *were* used to produce responsive documents and those search terms must be disclosed pursuant to the plain language of the ESI Order.

then opt out of all future discussions of relevant search terms proposed in good faith by Plaintiff.

As for Defendants' position that they were not required to provide information related to search term hit reports, databases, custodians, or date ranges, that information falls within the "other method[s] of limitation used to cull responsive data" that is required to be disclosed under the ESI order.  Applying a plain language interpretation, a decision to search for ESI in only certain databases or within the control of a particular custodian would constitute a "method of limitation" in searching for responsive data, as would applying a date range to the possible results.

In sum, Defendants have not complied with their discovery obligations under the Court's ESI Order.  Defendants have not disclosed the methods of limitation used to identify relevant ESI (including databases, custodians, and date ranges) and have not met and conferred in good faith with Plaintiff's counsel to identify additional search terms likely to produce responsive documents. Under the plain language of the ESI Order, Defendants must do so.

Further, under Rule 37(a)(5)(A), the Court must order Defendants to pay Plaintiff's attorney's fees and other reasonable

expenses incurred in making this Motion because (i) Plaintiff did attempt in good faith to obtain the discovery without Court action, (ii) Defendants' nondisclosure, response, or objection was not substantially justified, and (iii) no other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).

Therefore, Plaintiff's Motion to Compel Defendants to Produce ESI Information is GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Defendants to Participate in Class Discovery (d/e 29) is GRANTED; Defendants' Motion to Stay Discovery (d/e 37) is DENIED as MOOT; Plaintiff's Motion to Compel Defendants to Produce ESI Information (d/e 43) is GRANTED; and Defendants' Motion to Dismiss for Lack of Jurisdiction and Rule 11 Sanctions (d/e 49) is DENIED.

Plaintiff is DIRECTED to submit an affidavit setting forth her reasonable expenses and attorney's fees within 7 days of this Order.

This case is referred back to the Magistrate Judge for further management of discovery, including resetting the fact discovery deadline currently set for November 30, 2025.

**IT IS SO ORDERED.**
**ENTERED: November 7, 2025.**
**FOR THE COURT**

_/s/ Sue E. Myerscough_

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**